IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01832-REB-MEH

GIOVANNI LARATTA,

     Plaintiff,

v.

MICK McCORMAC,

     Defendant.

---

## RECOMMENDATION ON MOTION TO DISMISS AND MOTION FOR PRELIMINARY INJUNCTION

---

**Michael E. Hegarty, United States Magistrate Judge.**

     Pending before the Court are the Plaintiff's Memorandum of Law in Support of Order to Show Cause for Preliminary Injunction [filed December 23, 2009; docket #18] and Defendant's Motion to Dismiss [filed January 8, 2010; docket #20]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. L.Civ.R 72.1C, the motions have been referred to this Court for recommendation, and the matters are now fully briefed. The Court recommends that, for the reasons stated herein, Defendant's motion be **granted** and Plaintiff's motion be **denied**.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

**BACKGROUND**

Plaintiff, Giovanni Laratta, is a prisoner in Colorado who filed a *pro se* civil rights Complaint on August 3, 2009. Two days later, Laratta filed an Amended Prisoner Complaint. On August 18, 2009, the Court found the Amended Complaint deficient and ordered Laratta to file a Second Amended Complaint, which he did on September 17, 2009, alleging Eighth and Fourteenth amendment violations against two prison officials. Upon initial review, Judge Weinshienk found that Plaintiff failed to allege personal participation by one of the Defendants, George Dunbar, and failed to state an Eighth Amendment claim against the remaining Defendant, Mick McCormac. Accordingly, Judge Weinshienk dismissed the claims against Dunbar and the Eighth Amendment claim against McCormac. Thus, the only remaining claims in this action are Plaintiff's Fourteenth Amendment due process claims against Defendant McCormac.

Essentially, Plaintiff alleges that on or about October 5, 2007, while he was confined at the Buena Vista Correctional Facility, he received a disciplinary notice pertaining to a letter confiscated by prison officials and considered to be contraband. He claims that McCormac who "oversaw" the disciplinary hearing on October 11, 2007, failed to list the name of the witness to the charge on the notice; therefore, Plaintiff was denied the opportunity to cross-examine the witness. In addition, Plaintiff claims McCormac failed to attach to the notice a copy of the letter for which he was being charged; therefore, Plaintiff was denied the opportunity to determine the existence of the letter and examine the content. Finally, Plaintiff claims he was never issued a "disposition of notice" pertaining to the letter in violation of prison policies. As a result of this conduct, the Plaintiff claims he was improperly placed, and now remains, in Administrative Segregation (which he describes as "solitary confinement"). Through this action, Plaintiff seeks injunctive relief, compensatory damages and punitive damages against Defendant McCormac.

Several months after he filed his Second Amended Complaint, Plaintiff filed the within

motion for preliminary injunction. He asserts that he has a significant liberty interest that has been, and continues to be, infringed by his continued confinement in administrative segregation (since, apparently, October 2007). Plaintiff states that the isolation has "created a social dislocation from family and friendship ties," that he has become mentally and emotionally "discharged," that his eating and sleeping patterns have become abnormal, and that he battles with thoughts of suicide. Although he does not articulate a specific request for relief, the Court construes the motion as seeking an order transferring the Plaintiff out of administrative segregation. Defendant counters that Plaintiff has failed to demonstrate a likelihood of success on the merits and an irreparable injury.

Two weeks after the motion for preliminary injunction was filed, Defendant filed the within motion to dismiss in response to the Plaintiff's Second Amended Complaint. Defendant asserts that Plaintiff has failed to allege his personal participation in the challenged conduct, failed to state a claim for compensatory damages, failed to allege that the challenged disciplinary conviction was invalidated pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), and failed to allege a viable due process claim. Defendant asserts that he is entitled to qualified immunity due to Plaintiff's failure to establish a constitutional violation. In response, Plaintiff asserts that Defendant was personally responsible for failing to list a witness on the Notice of Charge and failed to attach to the Notice a copy of the letter for which the Plaintiff was disciplined in violation of CDOC Administrative Regulation 150-1 and his constitutional rights. Furthermore, the Plaintiff cites numerous cases for the proposition that the PLRA does not necessarily bar his claim for compensatory damages, which includes more than claims for mental and emotional injuries. Also, Plaintiff contends that *Heck* does not apply to his claims because he does not seek restoration of good time credits nor any relief that would affect the validity of his conviction or the duration of his sentence. Finally, Plaintiff argues that Defendant's conduct (described above) infringed his liberty interest within the meaning of *Wolff v. McDonnell*.

<u>**DISCUSSION**</u>

Only days after Plaintiff filed his motion for preliminary injunction, Defendant filed his motion to dismiss in response to the Second Amended Complaint. Based on the timing of the motions, the Court will consider the motion to dismiss in its analysis of the motion for preliminary injunction.

**I.     Motion for Preliminary Injunction[2]**

A preliminary injunction is an extraordinary remedy that should be granted only when the moving party clearly and unequivocally demonstrates its necessity. *See Schrier v. Univ. of Colo.,* 427 F.3d 1253, 1258 (10th Cir. 2005). In the Tenth Circuit, a party requesting a preliminary injunction must clearly establish that: (1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. *Id.* The burden is on the movant to establish his right to the relief requested. *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975).

Additionally, I must consider well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. *See, e.g., Meachum v. Fano,* 427 U.S. 215 (1976). Courts should grant injunctive relief involving the management of prisons only under exceptional and compelling circumstances. *Taylor v. Freeman,* 34 F.3d 266, 269-70 & n. 2 (4th Cir. 1994). Indeed, the Tenth Circuit has stated that

---

[2]The Court notes that Plaintiff filed an "Order to Show Cause for Preliminary Injunction and Temporary Restraining Order" on March 4, 2010 [docket #50]. Because the document did not seek relief, the Court construed it as a proposed order rather than as a motion. Nevertheless, the "Memorandum of Law in Support of the Order to Show Cause for A Preliminary Injunction and Temporary Restraining Order" accompanying the proposed order raises essentially the same arguments and case law as the original motion. However, construing Plaintiff's pleadings liberally and to the extent that any information in the Memorandum of Law is different than the original motion, the Court will consider such information here.

it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems. It is a delicate role assigned to the federal courts to display that restraint so necessary 'in the maintenance of proper federal-state relations.'" *Battle v. Anderson,* 564 F.2d 388, 392 (10th Cir. 1977) (citation omitted). As such, "intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts.... [This] is especially true where mandatory injunctive relief is sought and only preliminary findings as to the plaintiff's likelihood of success on the merits have been made." *Taylor,* 34 F.3d at 269 (citations omitted).

Moreover, "[b]ecause the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held," the Tenth Circuit has "identified the following three types of specifically disfavored preliminary injunctions ...: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits." *Schrier,* 427 F.3d at 1258-59 (citations omitted).[3] These disfavored injunctions are "more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* at 1259 ; *see also Citizens Concerned for Separation of Church & State v. Denver,* 628 F.2d 1289, 1299 (10th Cir. 1980) (mandatory injunctive relief should be granted only under compelling circumstances inasmuch as it is a harsh remedial process not favored by the courts).

---

[3]Mandatory injunctions "affirmatively require the nonmovant to act in a particular way." *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1099 (10th Cir. 1991), *overruled on other grounds by O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) . Injunctions that disturb the status quo alter the parties' existing relationship. *Id.* at 1100. "The status quo is not defined by the parties' existing *legal rights*; it is defined by the *reality* of the existing status and relationships between the parties, regardless of whether the existing status and relationships may ultimately be found to be in accord or not in accord with the parties' legal rights." *Id.* (emphasis in original).

Here, Plaintiff seeks a preliminary injunction that would require Defendant[4] to act in a way that (Plaintiff alleges) is contrary to his prior practices, *i.e.*, to change the decision to place the Plaintiff in administrative segregation and to transfer him back to the general population. The requested relief would alter the status quo rather than preserve it and would also require Defendant to engage in affirmative (mandatory) actions. For these reasons, the Court finds that Plaintiff's requested injunctive relief "constitutes a specifically disfavored injunction" that "must be more closely scrutinized." *See Schrier,* 427 F.3d at 1259, 1261.

A.    Irreparable Injury

It is well established that "[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1260 (10th Cir. 2004) (citations omitted).

Here, the Plaintiff must first show that he will suffer irreparable injury if his request for injunctive relief is denied. *Id.* at 1258. "To constitute irreparable harm, an injury must be certain, great, actual 'and not theoretical.'" *Heideman v. S. Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wisconsin Gas Co. v. FERC,* 758 F.2d 669, 674 (D.C. Cir. 1985)). Irreparable harm is more than "merely serious or substantial" harm. *Id.* (citation omitted). The party seeking the preliminary injunction "must show that 'the injury complained of is of such *imminence* that there is

---

[4]Plaintiff does not articulate whether he brings his claim against the Defendant in his individual or official capacity. However, construing Plaintiff's complaint liberally as I must and considering Plaintiff's claims for both injunctive relief and monetary damages, the Court construes the Second Amended Complaint as asserting a due process claim against the Defendant in both his individual and official capacities. *See Fenner v. Suthers*, 194 F. Supp. 2d 1146, 1149 (D. Colo. 2002).

a clear and present need for equitable relief" to prevent irreparable harm." *Id.* (emphasis in original) (citation omitted). Injunctive relief is only appropriate to avoid an existing threat of injury and cannot be employed to protect against an injury that is merely feared to be suffered at some indefinite future date. *See Connecticut v. Massachusetts,* 282 U.S. 660, 674 (1931). Thus, to demonstrate irreparable harm, the Plaintiff "must establish both that harm will occur and that, when it does, such harm will be irreparable." *Vega v. Wiley*, 259 F. App'x 104, 106 (10th Cir. Dec. 17, 2007) (unpublished).

In his motion, the Plaintiff alleges the following deprivations as a result of his confinement in punitive segregation: restrictions on visitation with family and friends, mental and emotional distress (thoughts of suicide) and abnormal sleeping and eating patterns. With respect to visitation restrictions, generally, neither visitors nor prisoners themselves have a constitutional right to prison visitation. *See Green v. United States Marshals Serv.*, 2007 WL 840311, *14 (D.S.C. Mar. 15, 2007) (citing *White v. Keller,* 438 F. Supp. 110 (D. Md. 1977)). In addition, the Plaintiff fails to demonstrate how abnormal eating or sleeping patterns rise to the level of "more than severe or substantial harm." With respect to his mental and emotional health, Plaintiff fails to allege that he has sought medical care or treatment for his ailments; fears of future harm do not establish a threat of injury necessary to justify the imposition of a preliminary injunction. Moreover, the Court notes that Plaintiff waited almost five months after he initiated the action to request injunctive relief for harms that allegedly began 26 months earlier.

Therefore, the Court finds that Plaintiff's claimed injuries are not of the serious or substantial nature, nor "of such imminence that there is a clear and present need for equitable relief," as required to impose injunctive relief at this stage of the litigation. Nevertheless, I am aware that a presumption of irreparable injury exists where constitutional rights are infringed. *Kikumura v. Hurley,* 242 F.3d 950, 963 (10th Cir. 2001) (holding that a presumption of irreparable injury exists where plaintiff

claimed that monetary relief would not properly redress the violation of his right to free exercise of religion caused by previous denials of pastoral visits). Here, to be entitled to a presumption of irreparable injury, the Plaintiff must establish a likelihood of success on the merits of his constitutional claim.

B.    Likelihood of Success on the Merits

Defendant has filed a motion to dismiss the Plaintiff's due process claims. Based upon the Court's conclusion concerning Defendant's motion (see below), dismissal without prejudice is warranted at this time, and, thus, it is undeterminable whether, in the event Plaintiff files an amended complaint at some point, Plaintiff is likely to succeed on the merits of his claims. Therefore, considerations of the first and second factors in analyzing the motion for preliminary injunction weigh against granting the motion.

C.    Balance of Hardships

Plaintiff alleges that he has suffered significant harm from his punitive segregation and that "there is [sic] no harms that the Defendant could possibly face besides those incurred for physically transferring the plaintiff back to ... general population." Docket #33 at 10. Defendant argues that the Court's interference in the state's discipline procedures for offenders would "significantly undermine the CDOC's discretion and autonomy." Docket #23 at 8.

The Court agrees with Defendant. Moreover, while the Plaintiff expresses the preference to be transferred to general population, he fails to articulate how his preference could be carried out with minimal impact on the CDOC's day-to-day decisions. Considering the lack of irreparable injury at this stage of the case, the harm to Defendant (and to the public, in general) outweighs any harm the Plaintiff may suffer from denial of his motion at this stage of the litigation. Accordingly, the Court finds that Plaintiff has failed to make the requisite showing to tip this factor in his favor.

D.    Public Interests

According to Defendant, the CDOC has an interest in ensuring that its prisons remain safe for staff and inmates and that inmates comply with the rules and regulations of the CDOC. Plaintiff responds that the CDOC also has a responsibility for ensuring the health and well-being of its inmates, which, in turn would aid offenders to return to society "rehabilitated and better men than before they arrived in the CDOC." Docket #33 at 11. The Court agrees. But, again, Plaintiff has failed to allege that he has sought relief from the CDOC for any health issues and has been denied. Thus, Plaintiff has failed to make the requisite showing to tip this factor in his favor.

In sum, the Court finds that Plaintiff is unable to meet his burden to show that a preliminary injunction is necessary in this case. Therefore, this Court recommends that the District Court deny the Plaintiff's motion for preliminary injunction in this matter.

## II.    Motion to Dismiss

In his Second Amended Complaint, Plaintiff alleges that he suffered due process violations during an October 2007 disciplinary hearing for which Defendant failed to list Plaintiff's "accuser" as a witness on the Notice of Charge, failed to attach a copy of the confiscated letter to the Notice, and failed to inform the mail staff of the need to issue a Notice of Rejection/Disposition of Mail for the confiscated letter. In response to the Complaint, Defendant filed the within motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

A.    Dismissal under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited

jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims. Further, under a 12(b)(1) motion, "a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)). In such an instance, "a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion." *Stuart*, 271 F.3d at 1225.

B.     Dismissal under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Twombly* evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 1949-51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. If the allegations state

a plausible claim for relief, such claim survives the motion to dismiss.  *Id*. at 1950.

C.    Dismissal of a Pro Se Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted).  The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant."  *Id*.; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).  A *sua sponte* dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

D.    Analysis

Defendant argues that Plaintiff has failed to allege that the challenged disciplinary conviction was invalidated pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), failed to allege Defendant's personal participation in the challenged conduct, failed to allege a viable due process claim, and failed to state claims for compensatory damages.  Defendant claims qualified immunity from suit in this matter.

1.      *Favorable Termination*

Defendant contends that this Court lacks subject matter jurisdiction over Plaintiff's claims because Plaintiff has failed to allege his disciplinary conviction was overturned pursuant to *Heck v. Humphrey*. However, the Court finds that *Heck* does not apply to this case. In *Heck v. Humphrey,* 512 U.S. 477, 487 (1994), the Supreme Court held that "[w]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487. The Court noted that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." *Id.* at 481.

The holding in *Heck* applies to challenges to prison disciplinary convictions when the conviction affects the inmate's good time credits and, as a result, the duration of his confinement. *Muhammad v. Close,* 540 U.S. 749 (2004). In *Muhammad,* the Court noted that prison disciplinary proceedings do not "raise any implication about the validity of the underlying conviction," but such proceedings "may affect the duration of time to be served by bearing on the award or revocation of good-time credits." *Id.* at 754. Thus, *Heck* bars a collateral attack on prison disciplinary convictions only if the claim challenges the loss of a good time credit or if it is a collateral attack on the prisoner's underlying conviction. *Id.* The *Muhammad* Court found that the inmate's section 1983 suit was not barred by *Heck* because the lower court had "expressly found or assumed that no good-time credits were eliminated" by the action in question. *Id.* "His § 1983 suit challenging this action could not therefore be construed as seeking a judgment at odds with his conviction or with the State's calculation of time to be served in accordance with the underlying sentence." *Id.* at 754-55.

In the instant case, there is no allegation that Plaintiff has actually been deprived of any earned time credit and no request for restoration of any lost earned time credits. In fact, the Plaintiff asserts that he "had no good-time credit to lose" at the time of his disciplinary conviction due to the brief period between his arrival at the facility and the conviction, and due to a previous "write-up." Docket #41 at 15. While Defendants assert that expungement of Plaintiff's disciplinary conviction "would" have an impact on his eligibility for earned time credit, the applicable Colorado statute states that earned time "may" be deducted from a prisoner's sentence upon a demonstration that the prisoner has progressed in certain areas including work, training, counseling, behavior and group living. *See* Colo. Rev. Stat. § 17-22.5-405(1). In fact, according to Defendant, the applicable CDOC regulation provides that inmates "will" be ineligible for earned time credits for a conviction of a COPD violation. Docket #44 at 3. Consequently, there is no indication that Plaintiff will automatically receive earned time credit upon an expungement of his conviction and, thus, there appears to be no effect on the duration of his sentence. Therefore, the Plaintiff's § 1983 claim may properly proceed. *See Butler v. Compton,* 482 F.3d 1277, 1280 (10th Cir. 2007). Accordingly, the Court declines to recommend dismissal on this ground, and will instead proceed to analyze the merits of Plaintiff's due process claims.

2.    *Personal Participation*

First, the Court disagrees that Plaintiff's allegations fail to show Defendant's participation in the due process claim involving the confiscation of the letter and notice of charge that led to disciplinary proceedings. All parties agree that Defendant is an "Intelligence Officer" for the CDOC, whose responsibility is to prepare a Notice of Charge when an inmate is charged with a disciplinary offense. With respect to Plaintiff's claim that he did not receive a "notice of rejection/disposition of mail" when the letter was confiscated, the Plaintiff does not dispute that such notice originates from the CDOC mailroom staff, but argues that Defendant failed to notify mail staff that he confiscated the

letter, thereby the mail staff failed to notify Plaintiff. Thus, the Court recommends finding that Plaintiff has sufficiently stated Defendant's personal participation in the alleged due process claim.

### 3. Due Process in Disciplinary Hearing

Generally, a plaintiff must make two showings in order to proceed on a procedural due process claim. *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1209 (10th Cir. 2007). First, a plaintiff must demonstrate that he possesses a protected liberty or property interest, and second, a plaintiff must show the procedures utilized were inadequate under the circumstances. *Id.*

Plaintiff's claim is governed by the Supreme Court's opinion in *Sandin v. Conner*, 515 U.S. 472, 484 (1995), which found that due process liberty interests created by state regulations are "generally limited to freedom from restraint that imposes an atypical and significant hardship on the inmate in relation to ordinary incidents of prison life." The *Sandin* Court expanded upon its analysis in *Wolff v. McDonnell*, 418 U.S. 539 (1974) to determine whether the Due Process Clause afforded an inmate, who received 30 days in punitive segregation following a disciplinary hearing, a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff*. *Id.* at 483-84.

Following *Sandin*, the Supreme Court confirmed that an examination of prison rules or regulations themselves is no longer an appropriate method for ascertaining the existence of a liberty interest; rather, courts must look to the conditions of confinement to determine whether the inmate has suffered a "hardship" as set forth in *Sandin*. *See Wilkinson v. Austin*, 545 U.S. 209, 221-23 (2005); *see also Estate of Miki Ann DiMarco v. Wyoming Dep't of Corrections*, 473 F.3d 1334, 1339 (10th Cir. 2007) ("[s]tate policies or regulations will not create the basis for a liberty interest in the conditions of confinement so long as they do not impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"). In fact, in Colorado, state laws and regulations themselves do not entitle inmates to remain in the general population absent certain conduct.

*Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994).

Under *Sandin* and its progeny, then, a right to due process in a disciplinary hearing arises only when the punishment imposes an atypical and significant hardship on the inmate in relation to ordinary incidents of prison life or when it will inevitably affect the duration of a sentence. *See Sandin*, 515 U.S. at 484, 487. Thus, the first question to address is whether an inmate's punishment imposed following a disciplinary hearing gives rise to a right to due process in the hearing under the Fourteenth Amendment.

In this case, to prove that he suffered a due process violation, the Plaintiff must demonstrate that the sanctioned restraint - here, more than 800 days in punitive segregation - imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life. For purposes of this motion, however, the Plaintiff need only sufficiently allege that he suffered the "hardship" defined in *Sandin* and, thus, whether he gained a right to due process protections during his disciplinary hearing.

a. <u>Liberty Interest</u>

A "significant and atypical hardship" sufficient to create a liberty interest appears to this Court to be one that is of substantial degree (*i.e.*, whether such conditions mirror those in administrative segregation and protective custody) and duration. *See Gaines v. Stenseng, et al.*, 292 F.3d 1222, 1226 (10th Cir. 2002). For example, the Supreme Court determined that the government created a liberty interest subject to due process protections when officials placed an inmate *indefinitely* in a super-max prison where almost all human contact was prohibited and which made the inmate ineligible for parole. *Wilkinson*, 545 U.S. at 224. Moreover, the Tenth Circuit found that an inmate's allegations that, for a three-year period, he was confined to his cell for all but five hours each week and denied access to the telephone, showers, outdoor recreation, the law library and programs offered to general population, arguably implicated procedural due process concerns. *See Fogle v. Pierson*, 435 F.3d 1252, 1259

(10th Cir. 2006).

However, in *Sandin*, the Supreme Court determined that the inmate's confinement in punitive segregation (with insignificant exceptions) mirrored the conditions imposed on inmates in administrative segregation and protective custody and, thus, did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction. *Sandin*, 515 U.S. at 486. As such, the inmate's punitive confinement of 30 days did not present the type of atypical, significant deprivation in which a State might create a liberty interest. *Id.* In *Gaines*, the Tenth Circuit noted that "[d]isciplinary segregation for some lesser period [than seventy-five days] could fail as a matter of law to satisfy the 'atypical and significant' requirement in a case in the future, thereby making it futile to allow the *pro se* plaintiff to amend his complaint." *Gaines*, 292 F.3d at 1296.

Guided by these principles, the Court finds that Plaintiff's punitive segregation lasting more than 800 days likely constitutes a significant duration with respect to the "atypical and significant hardship" required by *Sandin*, *Gaines* and *Fogle*.

Regarding the degree of confinement, the Tenth Circuit has developed four factors that may be relevant in determining the appropriate baseline comparison and how significant the deviation from the baseline the conditions of confinement must be to create a liberty interest: (1) whether the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) whether the conditions of placement are extreme; (3) whether the placement increases the duration of confinement as it did in *Wilkinson*; and (4) whether the placement is indeterminate. *Estate of DiMarco*, 473 F.3d at 1342. Any assessment of these factors must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts. *Id.* (citing *Sandin*, 515 U.S. at 482-484).

Here, with respect to the second factor, Plaintiff alleges that he has been placed in punitive

16

segregation that he describes as "maximum security 23-hour lockdown prison." Docket #4 at 19.[5] At the same time, regarding the third factor, Plaintiff asserts that the segregation does *not* increase the duration of his incarceration for the underlying conviction. Docket #41 at 14. Defendant makes no argument regarding Plaintiff's conditions of confinement, nor does either party provide information at this stage of the litigation as to the other *DiMarco* factors, including the length of the punitive sentence. Nevertheless, construing the Plaintiff's pleadings liberally and accepting his allegations as true, the Court finds that Plaintiff has alleged conditions of confinement in punitive segregation that are of significant degree pursuant to *Sandin*.

The Court recommends finding that Plaintiff has alleged a liberty interest sufficient to warrant due process protections in the disciplinary hearing. The Court will now proceed to analyze whether the Plaintiff has sufficiently alleged that the disciplinary hearing procedures were inadequate.

b.    Hearing Procedures

When a punishment implicates a liberty interest, prisoners are entitled to some due process protections in prison disciplinary proceedings. *Grossman v. Bruce*, 447 F.3d 801, 804 (10th Cir. 2006). They are not, however, entitled to "the full panoply of rights due a defendant" in a criminal prosecution. *Id.* at 805 (citing *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974)). Rather, a prisoner who has a liberty interest in a disciplinary hearing must receive "(1) written notice of the charges against him at least twenty-four hours before the hearing; (2) the opportunity to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; and (3) a written statement of the factfinders as to the

_____

[5]Plaintiff also alleged twice in the briefing on his Motion for Preliminary Injunction that his conditions of confinement mirror those of the plaintiff's conditions in *Fogle* (confined to his cell for all but five hours each week and denied access to the telephone, showers, outdoor recreation, the law library and programs offered to general population). Docket #18 at 4. Defendant made no arguments regarding the conditions of Plaintiff's confinement in the briefing.

evidence relied on and the reasons for the disciplinary action taken." *Smith v. Maschner*, 899 F.2d 940, 946 (10th Cir. 1990) (citing *Wolff*, 418 U.S. at 563-66) (citations and internal quotations omitted).

Plaintiff does not raise objections regarding the first and third requirements for due process; rather, Plaintiff contends that he was unable to present a proper defense at the disciplinary hearing because a witness was not listed on the Notice of Charge nor was a copy of the confiscated letter attached to the Notice. The scope of an inmate's right to call and confront witnesses and present documentary evidence is committed to the sound discretion of prison officials who must exercise their discretion on an individualized basis. *See Ramer v. Kerby,* 936 F.2d 1102, 1104 (10th Cir. 1991). With respect to calling witnesses, "[p]rison officials must decide on a case-by-case basis whether legitimate penological concerns ... counsel against permitting requested staff members to appear at the hearing." *Id.* Errors made by prison officials in denying evidence at hearings are subject to harmless error review. *See Grossman,* 447 F.3d at 805; *see also Chesson v. Jaquez,* 986 F.2d 363, 366 (10th Cir. 1993). Moreover, an inmate cannot maintain a due process claim for failure to permit witness testimony or present documentary evidence unless he shows that the document or testimony "'would have affected the outcome of his case.'" *Grossman,* 447 F.3d at 805 (quoting *Chesson,* 986 F.2d at 366).

Here, Plaintiff alleges "[t]he DOC contract worker Diana Smith who initially brought the allegation was not listed as a witness. Thus, Plaintiff was denied the right to cross the accuser." Docket #4 at 7. Although Plaintiff's allegation implies that he knew his "accuser" at the time of the hearing, he contends in the briefing that "Plaintiff was not informed of any witness to the violation rendering him unknowing and unable to request the testimony of any witness." Docket #41 at 18. Nevertheless, he does not allege that he requested the presence of his "accuser" at the hearing and was denied. Rather, he simply argues that, because Ms. Smith was not listed as a witness, he did not have

the opportunity to cross-examine her.

First, Defendant is correct that Plaintiff does not have a right to cross-examine a witness at a disciplinary hearing. *See Baxter v. Palmigiano*, 425 U.S. 308, 321-22 (1976). Second, Plaintiff fails to allege in any manner how Ms. Smith's witness testimony, had it been requested, would have affected the outcome of the hearing. *Grossman,* 447 F.3d at 805.

Likewise, Plaintiff fails to allege that he requested a copy of the confiscated letter and was denied. In this respect, Plaintiff's allegations are inconsistent. In his Second Amended Complaint (executed under penalty of perjury), Plaintiff states that "on or about 10-05-2007 [w]hile housed at the Buena Vista Correctional Complex, the Plaintiff received a disciplinary infraction for a letter said to be contraband confiscated by facility officials" and "Plaintiff asserts several violations [regarding] ... the disciplinary hearing held on 10-11-2007." Docket #4 at 5-6. However, in his response to the motion to dismiss, Plaintiff states he "was not notified of any evidence whatsoever that was to be used against him prior to the hearing" and "had he known of any alleged letter prior to the hearing he could have marshaled the facts and prepared his defense." Docket #41 at 19. Nevertheless, Plaintiff fails to allege how presentation of the confiscated letter during the proceeding would have affected the outcome of the hearing.

For these reasons, the Court finds that Plaintiff has failed to allege he was denied the opportunity to call witnesses and present documentary evidence in his defense pursuant to *Wolff, Maschner* and their progeny. The Court recommends that the District Court dismiss Plaintiff's due process claim, as currently stated, for failure to allege the inadequacy of the October 2007 disciplinary hearing proceedings.

4.    Due Process in Notice of Rejection of Mail

Plaintiff alleges that he "was never issued a disposition of notice pertaining to the letter -

defendant McCormac disregarded plaintiff [sic] right to due process through his failure to adhere to policies in issuance [sic] of the required notice of disposition." Docket #4 at 7-8. In his response brief, Plaintiff cites to a CDOC regulation for the proposition that Defendant failed to complete a "property/evidence voucher" for the confiscated letter in violation of CDOC policies. Docket #41 at 20. He also contends that Defendant failed to notify mail staff of the need to issue a notice of disposition. *Id.* at 21. However, Plaintiff fails to allege how such failures by Defendant, if true, constitute a constitutional violation under prevailing law. *See Gaines*, 292 F.3d at 1225 ("[t]o the extent [plaintiff] seeks relief for alleged violations of state statutes and prison regulations ... he has stated no cognizable claim under § 1983"). Even construing the Plaintiff's pleading liberally, if the Plaintiff alleges that his inability to present the notice of disposition at the hearing constitutes a due process violation, the Plaintiff fails to allege how such omission would affect the outcome of the hearing. *Grossman,* 447 F.3d at 805.

Therefore, as currently alleged, this Court recommends that Plaintiff's due process claim in the notice of disposition of mail be dismissed for failure to state a claim.

### 5.    Compensatory Damages

Plaintiff seeks relief in the form of compensatory damages for "pain and suffering." Docket #4 at 18. He describes the harm as follows: "The Plaintiff is mentally and emotionally discharged. Plaintiff [sic] eating and sleeping patterns are abnormal effecting [sic] plaintiff's physique. Plaintiff battles with thoughts of suicide and has become disconnected from spiritualness." *Id.* at 20. Defendant asserts that to the extent Plaintiff seeks compensatory damages, his claim alleging mental and emotional distress is barred by the PLRA due to his failure to show a physical injury. Plaintiff counters that while "his claims to procedural due process violations by the Defendant ... could not result in physical injury" [docket #41 at 8], he "prays this Court will recognize his claims as a matter

of injuries to his liberty and not those of mental and emotional injuries." *Id.* at 13.

Pursuant to 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Tenth Circuit has held that

> [t]he plain language of the statute does not permit alteration of its clear damages restrictions on the basis of the underlying rights being asserted. The underlying substantive violation ... should not be divorced from the resulting injury, such as "mental or emotional injury," thus avoiding the clear mandate of § 1997e(e). The statute limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional.

*Searles v. VanBebber,* 251 F.3d 869, 876 (10th Cir. 2001) (citation omitted).

Through his briefing on the motion, Plaintiff confirms that he has alleged no actual physical injury (despite the statement regarding his "physique") as a result of the "due process violations"; therefore, Defendant correctly asserts that the Plaintiff has failed to allege any physical injury. Consequently, any claim for compensatory damages for mental or emotional injury fails as a matter of law pursuant to the PLRA.  Under existing precedent, however, any claims for injunctive relief, nominal damages or punitive damages would survive.  *Id.* at 878-79; *see also Boles v. Neet*, 402 F. Supp. 2d 1237, 1244-45 (D. Colo. 2005).  Thus, the Court recommends that, to the extent Plaintiff seeks relief for mental or emotional injuries as a result of Defendant's conduct, such claim be dismissed.

    E.    <u>Leave to Amend</u>

Dismissal of a case under Fed. R. Civ. P. 12(b)(6) is "a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice." *Cayman Exploration Corp. v. United Gas Pipe Line,* 873 F.2d 1357, 1359 (10th Cir. 1989).  As such, in this jurisdiction, the court typically does not dismiss a claim under Fed. R. Civ. P. 12(b)(6) until the

plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations. *See Bellmon,* 935 F.2d at 1109-10. The Court may dismiss "*sua sponte* when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [her] to amend [her] complaint would be futile." *Id.* at 1110 (quoting *McKinney v. Oklahoma,* 925 F.2d 363, 365 (10th Cir. 1991)). Because it is possible the Plaintiff may cure the pleading deficiencies for his due process claims in this case, the Court recommends that Plaintiff be allowed to file an amended complaint within thirty (30) days of the District Court's Order.

## CONCLUSION

Based upon the foregoing, it is RECOMMENDED that the Plaintiff's Memorandum of Law in Support of Order to Show Cause for Preliminary Injunction [filed December 23, 2009; docket #18] be **DENIED** and Defendant's Motion to Dismiss [filed January 8, 2010; docket #20] be **GRANTED IN PART AND DENIED IN PART** as follows:

1.  Grant the motion to dismiss *with prejudice* Plaintiff's claim, if any, for compensatory damages for mental or emotional injuries;

2.  Grant the motion to dismiss *without prejudice* Plaintiff's due process claims; and

3.  Grant the Plaintiff leave to amend the Second Amended Complaint within thirty 30 days of the District Court's order to cure the pleading deficiencies, if he can, of the due process claims.

Respectfully submitted this 15th day of April, 2010, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge