IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01832-REB-MEH

GIOVANNI LARATTA,

      Plaintiff,

v.

MICK McCORMAC,

      Defendant.

---

**RECOMMENDATION ON MOTION FOR SUMMARY JUDGMENT**

---

**Michael E. Hegarty, United States Magistrate Judge.**

      Before the Court is the Defendant's Motion for Summary Judgment [filed September 14, 2010; docket #68].  Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. L.Civ.R 72.1C, the motion has been referred to this Court for recommendation, and the matter is now fully briefed.  The Court recommends that, for the reasons stated herein, Defendant's motion be **granted**.[1]

**BACKGROUND**

**I.    Procedural History**

      Plaintiff, Giovanni Laratta, is a prisoner in Colorado who filed a *pro se* civil rights Complaint

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  Fed. R. Civ. P. 72.  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

on August 3, 2009.  Two days later, Laratta filed an Amended Prisoner Complaint. On August 18, 2009, the Court found the Amended Complaint deficient and ordered Laratta to file a Second Amended Complaint, which he did on September 17, 2009, alleging Eighth and Fourteenth amendment violations against two prison officials.  Upon initial review, Judge Weinshienk found that Plaintiff failed to allege personal participation by one of the Defendants, George Dunbar, and failed to state an Eighth Amendment claim against the remaining Defendant, Mick McCormac. Accordingly, Judge Weinshienk dismissed the claims against Dunbar and the Eighth Amendment claim against McCormac.       On January 8, 2010, Defendant McCormac filed a Motion to Dismiss Plaintiff's remaining Fourteenth Amendment due process claims against him.  On August 24, 2010, Judge Blackburn affirmed this Court's April 15, 2010 recommendation that the motion to dismiss be granted and that Plaintiff be permitted to file an amended complaint concerning his due process claims.  In addition, Judge Blackburn granted the Plaintiff's motion to amend complaint (filed after the recommendation was issued) and affirmed the filing of Plaintiff's Third Amended Complaint, which was filed August 24, 2010.

       In the Third Amended Complaint, Plaintiff alleges that on or about October 5, 2007, while he was confined at the Buena Vista Correctional Complex ("BVCC"), he received a disciplinary notice pertaining to a letter confiscated by prison officials and considered to be contraband.  He claims that Defendant McCormac, CDOC Intelligence Officer, failed to list Officer Diana Smith as a witness to the infraction on the notice.  As such, Plaintiff asserts he was unaware prior to the disciplinary hearing that Officer Smith might be used to support the charge; he was precluded from calling Officer Smith himself as a witness for the hearing; and the witness, if called, would have testified that she did not confiscate the letter directly from Plaintiff, which allegedly would have altered the outcome of the hearing.  In addition, Plaintiff claims McCormac failed to attach to the notice a copy of the letter for which he was being charged; therefore, Plaintiff states he was denied

the opportunity to determine the existence of the letter and validate the content.  Finally, Plaintiff claims he was never issued a "disposition of notice" pertaining to the letter in violation of prison policies.  As a result of this conduct, the Plaintiff claims he was improperly placed, and now remains, in Administrative Segregation (which he describes as "solitary confinement").  Through this action, Plaintiff seeks declaratory and injunctive relief, punitive damages, and fees and costs against Defendant McCormac.

In accordance with Judge Blackburn's ruling, Defendant filed the present Motion for Summary Judgment on September 14, 2010.  Defendant seeks qualified immunity contending that Plaintiff cannot show his punishment poses an atypical and significant hardship or will inevitably affect the duration of his sentence sufficient to establish a liberty interest for his due process claim. In the alternative, Defendant claims that Plaintiff received legally adequate due process during his disciplinary hearing.  Finally Defendant argues that Plaintiff fails to state a constitutional violation in any failure to receive a "disposition of notice" pertaining to the letter.

## II.   Findings of Fact

The Court finds the following facts from the affidavits[2] and documentary evidence provided in this matter.

1.      A report of disciplinary sanctions imposed upon the Plaintiff during his incarceration reflects that he received 30 days' punitive segregation at Buena Vista Correctional Facility for

---

[2]Neither the Plaintiff nor the Defendant filed affidavits in support of their positions. However, Plaintiff's Third Amended Complaint contains a declaration under penalty of perjury pursuant to 28 U.S.C. § 1746. Thus, although Plaintiff did not provide an affidavit in response to Defendant's motion for summary judgment, his complaint, verified in accordance with 28 U.S.C. § 1746, may be treated as an affidavit for purposes of summary judgement. *See Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988) (noting that, while a nonmoving party may not rely on unsupported or conclusory allegations in the pleadings, a verified complaint may be treated as an affidavit if it satisfies the standards for affidavits set out in Rule 56(e)).

refusing a drug test on July 7, 2007 and 20 days' punitive segregation for possession of dangerous drugs on August 21, 2007.  Docket #68-1 at 2.

2.      On October 5, 2007, Plaintiff was removed from the population and segregated pending an "investigation of bringing contraband into facility."  Docket #68-1 at 3.  The removal was approved by the warden that same day and by a "classification officer" on October 9, 2007.  *Id.*

3.      On October 5, 2007, Defendant McCormac filed an Incident Report #154471 asserting that he was notified the same day by Officer Diana Smith that she intercepted a letter written by Plaintiff soliciting help from his cousin, Shawn Laratta, to find a female willing to introduce drugs into the facility via the visiting room for sale to inmates.  Docket #168-1 at 7-8.  Defendant lists charges as "I-13 Dealing in Dangerous Drugs (Attempt)" and "II-8 Possession or Use of Dangerous Drugs (Attempt)."  *Id.*

4.      An Incident Investigation Report signed by Investigating/Reviewing Supervisor "Anderson" (date illegible) reflects that an investigation was initiated on October 5, 2007 and a charge listed of "Class I Charge 13 Dealing in Dangerous Drugs (Attempt)."  Docket #68-1 at 9.

5.      An Amended[3] Notice of Charge, dated October 5, 2007, reflects a Code of Penal Discipline ("COPD") charge of "Class I, Rule 13, Dealing in Dangerous Drugs (Attempt)" and summarizes the charge as follows:

> On 10/05/07, at approximately 0830 hours, I, Lt. Mick McCormac, was notified by Officer Diana Smith that she had found a letter being sent out of BVCF by offender Giovanni Laratta, #136216, which contained information that clearly indicated offender Laratta was soliciting assistance from his cousin Shawn Laratta to find a female party willing to introduce drugs into the facility via the visiting room to an unidentified offender, whose name Laratta would be provided at a later date.  Laratta goes on in the letter to tell his cousin how much money they could make together and that offender Laratta would be willing to pay the female mule $100 dollars every time she visited and brought a load and that he would like her to bring a load on a

_____

[3]The notice was amended to reflect the correct charge; the original notice listed a charge of "Class I, Rule 12, Possession of Dangerous Contraband."  *See* docket #68-1 at 10.

> weekly basis. The letter written by offender Laratta has been secured as evidence,
> a copy has been provided to the disciplinary officer for review.

Docket #68-1 at 11.  The notice reflects no names listed under "Names of Witness to Violation."

*Id.*  In addition, the notice states that a formal hearing was scheduled to occur on October 11, 2007.

*Id.*  Plaintiff signed the notice on October 5, 2007 acknowledging receipt of the document.[4]  *Id.*

    6.      An Amended Disposition of Charge dated October 15, 2007 reflects Hearing Officer

Anderson's disposition of the COPD charge against Plaintiff.  Docket #68-1 at 14.  In describing the

testimony presented at the hearing, Mr. Anderson states:

> Offender Laratta states he has nothing to present on his behalf other than his plea. ...
> Offender Laratta was found to have written a letter and processed it through the
> facility mail system. The letter was intercepted and confiscated by staff as evidence.
> Copies of the envelope and the two handwritten pages of the letter written by
> Offender Laratta were presented as evidence by the Disciplinary Officer for review
> only and accepted by me. A copy was not afforded to Offender Laratta due to
> content, but was made available to Offender Laratta for review. The letter clearly
> indicates Offender Laratta's attempt to have drugs brought into the facility for the
> purpose of selling them and making a profit. This is confirmed through the facility's
> Intelligence Officer, who is also the Initiating Officer, Lt. M. McCormac.

*Id.*  Hearing Officer Anderson found that "Offender Laratta attempted to have drugs brought into

the facility for the purpose of dealing them and making money. Therefore, I find that the

preponderance of the evidence requirement has been met for a finding of guilty to Class I-13

(Attempt)."  *Id.*  Mr. Anderson imposed penalties of "30 Days Punitive Segregation [six days for

time served], 45 Days Loss of Good Time."  *Id.*  Plaintiff signed the notice on October 16, 2007

acknowledging receipt of the document.  *Id.*

    7.      Hearing Officer Anderson stated during the hearing that he was "going to refer

[Plaintiff] to an administrative segregation hearing."  Docket #68-3 at 4.

    8.      Plaintiff completed an Offender Appeal Form on October 24, 2007 asserting a "lack

---

[4]No party disputes that it is Plaintiff's signature appearing in the acknowledgment sections
on the forms presented to the Court in this case.

of substantial evidence" saying, "Testimony and evidence presents that a letter I wrote clearly indicates an attempt by me to have 'drugs' brought into the facility. No where in the letter did I write that it was 'drugs' that I wanted for the purpose of selling and making a profit." Docket #68-1 at 15.

9. A Classification Summary - Administrative Segregation Hearing form dated October 24, 2007 reflects a decision to assign Plaintiff to Maximum Security, Administrative Segregation for the following reason: "Offender Laratta's attempt to introduce dangerous drugs into the facility does pose a serious risk to the security of the facility." Docket #74 at 9. Plaintiff signed the form on October 25, 2007 acknowledging receipt of the document. *Id.*

## LEGAL STANDARDS

### I. Fed. R. Civ. P. 56

Summary judgment serves the purpose of testing whether a trial is required. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). However, the non-moving party has the burden of showing that there are issues of material fact to be determined. *Id.* at 324.

That is, if the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original) (citation omitted); *see also Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## II.      Treatment of a Pro Se Plaintiff's Pleadings

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). In other words, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and

sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  But, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## ANALYSIS

### I.      Qualified Immunity

The Defendant asserts that he is entitled to qualified immunity on Plaintiff's claims against him in his individual capacity.[5]  Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  It is an entitlement not to stand trial or face the other burdens of litigation.  *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted).  The privilege is an immunity from suit rather than a mere defense to liability.  *Id.*  When a defendant asserts the defense of qualified immunity at summary judgment, the burden shifts to the plaintiff to overcome the asserted immunity.  *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).  "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity."  *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)).

---

[5]Plaintiff complains that his factual allegations are "thin" (as described by Judge Blackburn) only because he has been unable to engage in discovery in this case.  However, discovery was stayed in this matter on March 9, 2010 following Defendant's assertion of the defense of qualified immunity.  Docket #54.  In ruling on the Motion to Dismiss, Judge Blackburn did not specifically find whether Defendant was entitled to qualified immunity, but granted Plaintiff's request to amend the complaint, extended the time within which dispositive motions were to be filed, and kept the October 2010 trial date.  Docket #64.  In the present motion, filed three weeks after Judge Blackburn's ruling, Defendant again asserted the defense of qualified immunity; thus, the stay on discovery has not been lifted.  *See* docket #70.

The Supreme Court recently discarded a review process that required courts to examine these questions sequentially, first considering whether a right had been violated, and then second - if the court concluded a right had been violated - whether that right was clearly established at the time of the alleged violation. *Pearson,* 129 S. Ct. at 816-22. *Pearson* retired this process, instead affording courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Here, in determining whether Plaintiff has met his burden of demonstrating constitutional violations that were clearly established, the Court construes the facts in the light most favorable to him as the non-moving party. *Scott*, 550 U.S. at 378. At summary judgment, the litigation is beyond the pleading phase; thus, a plaintiff's version of the facts must be supported by the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). That is, "as with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record so that no reasonable jury could believe it, a court should not adopt that version of the facts." *Id.* (citations and quotations omitted).

Consequently, for each claim alleged, the Court will examine first whether the Plaintiff has demonstrated on supported facts that the Defendants violated his constitutional right to due process. If the Plaintiff has established sufficient facts to support a constitutional violation, the Court will then proceed to determine whether the right was clearly established at the time of the alleged conduct.

## II.     Due Process in Disciplinary Hearing

Generally, a plaintiff must make two showings in order to proceed on a procedural due process claim. *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1209 (10th Cir.

2007). First, a plaintiff must demonstrate that he possesses a protected liberty or property interest, and second, a plaintiff must show the procedures utilized were inadequate under the circumstances. *Id.*

Plaintiff's claim is governed by the Supreme Court's opinion in *Sandin v. Conner*, 515 U.S. 472, 484 (1995), which found that due process liberty interests created by state regulations are "generally limited to freedom from restraint that imposes an atypical and significant hardship on the inmate in relation to ordinary incidents of prison life." The *Sandin* Court expanded upon its analysis in *Wolff v. McDonnell*, 418 U.S. 539 (1974) to determine whether the Due Process Clause afforded an inmate, who received 30 days in punitive segregation following a disciplinary hearing, a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff. Id.* at 483-84.

Following *Sandin*, the Supreme Court confirmed that an examination of prison rules or regulations themselves is no longer an appropriate method for ascertaining the existence of a liberty interest; rather, courts must look to the conditions of confinement to determine whether the inmate has suffered a "hardship" as set forth in *Sandin. See Wilkinson v. Austin*, 545 U.S. 209, 221-23 (2005); *see also Estate of Miki Ann DiMarco v. Wyoming Dep't of Corrs.*, 473 F.3d 1334, 1339 (10th Cir. 2007) ("[s]tate policies or regulations will not create the basis for a liberty interest in the conditions of confinement so long as they do not impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"). In fact, in Colorado, state laws and regulations themselves do not entitle inmates to remain in the general population absent certain conduct. *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994).

Under *Sandin* and its progeny, then, a right to due process in a disciplinary hearing arises only when the punishment imposes an atypical and significant hardship on the inmate in relation to

ordinary incidents of prison life or when it will inevitably affect the duration of a sentence. *See Sandin*, 515 U.S. at 484, 487. Thus, the first question to address is whether an inmate's punishment imposed following a disciplinary hearing gives rise to a right to due process in the hearing under the Fourteenth Amendment.

In this case, to prove that he suffered a due process violation, the Plaintiff must demonstrate that the sanctioned restraint imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life. If so, then the Court must determine whether the Plaintiff received due process in his disciplinary hearing.

A.     Liberty Interest

A "significant and atypical hardship" sufficient to create a liberty interest appears to this Court to be one that is of substantial degree (*i.e.*, whether such conditions do more than mirror those in administrative segregation and protective custody) and duration. *See Gaines v. Stenseng*, 292 F.3d 1222, 1226 (10th Cir. 2002). For example, the Supreme Court determined that the government created a liberty interest subject to due process protections when officials placed an inmate indefinitely in a super-max prison where almost all human contact was prohibited and which made the inmate ineligible for parole. *Wilkinson*, 545 U.S. at 224. Moreover, the Tenth Circuit found an inmate's allegations that, for a three-year period, he was confined to his cell for all but five hours each week and denied access to the telephone, showers, outdoor recreation, the law library and programs offered to general population, arguably implicated procedural due process concerns. *See Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006).

However, in *Sandin*, the Supreme Court determined that the inmate's confinement in punitive segregation (with insignificant exceptions) mirrored the conditions imposed on inmates in administrative segregation and protective custody and, thus, did not exceed similar, but totally

discretionary, confinement in either duration or degree of restriction. *Sandin*, 515 U.S. at 486.  As such, the inmate's punitive confinement of 30 days did not present the type of atypical, significant deprivation in which a State might create a liberty interest. *Id.*  In *Gaines*, the Tenth Circuit noted that "[d]isciplinary segregation for some lesser period [than seventy-five days] could fail as a matter of law to satisfy the 'atypical and significant' requirement in a case in the future, thereby making it futile to allow the *pro se* plaintiff to amend his complaint." *Gaines*, 292 F.3d at 1296.

Plaintiff attests in his verified Third Amended Complaint that he has been in Maximum Security - Administrative Segregation since October 5, 2007, a period of more than 1000 days. Docket #65 at 6.  However, Defendant has proffered evidence demonstrating that the punishment imposed upon the Plaintiff at the challenged October 11, 2007 disciplinary hearing was only 30 days' segregation, with six days' credit for time served.  Docket #68-1 at 13-14.  Defendant explains that Hearing Officer Anderson subsequently referred Plaintiff to an administrative segregation hearing due to Plaintiff's third disciplinary conviction involving drugs. *See* dockets #68-2 at 8, #68-3 at 3-4.  The Administrative Segregation Hearing summary, dated October 24, 2007, reflects a decision to place the Plaintiff in Maximum Security - Administrative Segregation for "Offender Laratta's attempt to introduce dangerous drugs into the facility [that] does pose serious risk to the security of the facility."  Docket #74 at 9.  According to the summary, the hearing took place on October 24, 2007 at 1035 hours and was attended by Committee Member, C. Robinson, and Presenter, K. Valerio. *Id.*  The document reflects the Plaintiff's signature affirming his receipt of a copy of the document on October 25, 2007. *Id.*  Defendant argues that Plaintiff never appealed nor challenged the administrative segregation hearing, and there is no indication nor argument from the Plaintiff that he did.

Accordingly, the Court finds that Plaintiff has failed to demonstrate on supported facts that

the punishment imposed at the challenged disciplinary hearing was more than the 30 days' segregation (and loss of 45 days' good time credit) sentenced by Hearing Officer Anderson. Guided by the principles of by *Sandin*, *Gaines* and *Wilkinson*, the Court recommends finding that Plaintiff's punitive segregation lasting only 30 days does not constitute a significant duration necessary to demonstrate an "atypical and significant hardship."

Regarding the degree of confinement, the Tenth Circuit has developed four factors that may be relevant in determining the appropriate baseline comparison and how significant the deviation from the baseline the conditions of confinement must be to create a liberty interest: (1) whether the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) whether the conditions of placement are extreme; (3) whether the placement increases the duration of confinement as it did in *Wilkinson*; and (4) whether the placement is indeterminate. *Estate of DiMarco*, 473 F.3d at 1342. Any assessment of these factors must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts. *Id.* (citing *Sandin*, 515 U.S. at 482-484).

Here, regarding the first factor, the Plaintiff was punished with 30 days' segregation for attempting to introduce drugs into the facility. Docket #68-1 at 14. The Court recommends finding that the segregation relates to and furthers the legitimate penological interests of punishment and rehabilitation. With respect to the second factor, Plaintiff alleges that he has been placed in Maximum Security - Administrative Segregation that he describes as "solitary confinement." Docket #65 at 6. Plaintiff also claims that all family visitation has been suspended since October 11, 2007. *Id.* However, a letter from Warden Dunbar to the Plaintiff dated October 11, 2007 reflects that, based upon Plaintiff's third conviction for a drug-related disciplinary charge, Plaintiff "forfeited the privilege of social visiting" for three years (or, until October 11, 2010), at which time the

Plaintiff would be able to reapply for visiting privileges.  Docket #68-1 at 16.  Plaintiff presents nothing more regarding the "extremity" of conditions in segregation; thus, the Court cannot conclude that Plaintiff's conditions of confinement exceed conditions typically imposed on inmates in administrative segregation and protective custody. *See Sandin*, 515 U.S. at 486.  Consequently, the Court recommends finding that this factor weighs against a determination that the degree of confinement is "atypical and significant."

Plaintiff also mentions nothing regarding the third factor; however, he has asserted previously in this litigation that the segregation does *not* increase the duration of his incarceration for the underlying conviction.  *See* docket #41 at 14.  With respect to the fourth factor, the terms of Plaintiff's punitive segregation were limited to 30 days.  As a result, the Court recommends finding that Plaintiff has failed to demonstrate on supported facts that the conditions of confinement in punitive segregation are of a significant degree pursuant to *Sandin*.

The Court recommends finding that Plaintiff has failed to establish on supported facts a liberty interest sufficient to warrant due process protections in the disciplinary hearing.[6]  Mindful that the District Court may conclude, however, that the Plaintiff has sufficiently stated a liberty interest, the Court will proceed to analyze whether Plaintiff has demonstrated on supported facts that the disciplinary hearing procedures were inadequate.

B.     Hearing Procedures

When a punishment implicates a liberty interest, prisoners are entitled to some due process

---

[6]Referring to this Court's recommendation and the District Court's affirmation granting in part and denying in part Defendant's Motion to Dismiss, the Plaintiff argues that the Court has already found he has established a liberty interest in this case.  However, under Fed. R. Civ. P. 12(b)(6), the Court was obligated to take Plaintiff's allegations as true.  As set forth above, in this Fed. R. Civ. P. 56 analysis of qualified immunity, the burden is on the Plaintiff to demonstrate on supported facts that Defendant violated his constitutional right to due process.

protections in prison disciplinary proceedings. *Grossman v. Bruce*, 447 F.3d 801, 804 (10th Cir. 2006). They are not, however, entitled to "the full panoply of rights due a defendant" in a criminal prosecution. *Id.* at 805 (citing *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974)). Rather, a prisoner who has a liberty interest in a disciplinary hearing must receive "(1) written notice of the charges against him at least twenty-four hours before the hearing; (2) the opportunity to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; and (3) a written statement of the factfinders as to the evidence relied on and the reasons for the disciplinary action taken." *Smith v. Maschner*, 899 F.2d 940, 946 (10th Cir. 1990) (citing *Wolff*, 418 U.S. at 563-66) (citations and internal quotations omitted). Moreover, the revocation of good time credits will not comport with minimum requirements of procedural due process "unless the findings of the prison disciplinary board are supported by some evidence in the record." *Terry v. Jones*, 259 F. App'x 85, 86 (10th Cir. 2007), *cert. denied*, 554 U.S. 924 (2008) (citing *Superintendent, Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 454 (1985)). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* (quoting *Superintendent*, 472 U.S. at 455-56). "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Id.* Only if the record is devoid of evidence, providing no support for a disciplinary board's decision, would a decision to revoke good time credits violate due process. *Id.* (citing *Superintendent*, 472 U.S. at 457).

With respect to the hearing, Plaintiff contends that he received insufficient notice of the charges and was unable to present a proper defense at the disciplinary hearing because Defendant

left the section on the Notice of Charge for listing witnesses blank and failed to list Officer Diana

Smith, a witness to the infraction, as a witness on the Notice; thus, Plaintiff claims that he was

unable to call Officer Smith at the hearing and was "not informed of any witness to the infraction."

Docket #65 at 4.  Moreover, Plaintiff claims that Defendant failed to attach a copy of the confiscated

letter to the Notice leaving Plaintiff unable to present the letter as evidence at the hearing, "or even

to have determined its existence and validate the alleged content."  *Id.* at 5.

The scope of an inmate's right to call and confront witnesses and present documentary

evidence is committed to the sound discretion of prison officials who must exercise their discretion

on an individualized basis.  *See Ramer v. Kerby,* 936 F.2d 1102, 1104 (10th Cir. 1991).  With respect

to calling witnesses, "[p]rison officials must decide on a case-by-case basis whether legitimate

penological concerns ... counsel against permitting requested staff members to appear at the

hearing."  *Id.*  Errors made by prison officials in denying evidence at hearings are subject to

harmless error review.  *See Grossman,* 447 F.3d at 805; *see also Chesson v. Jaquez,* 986 F.2d 363,

366 (10th Cir. 1993).  Moreover, an inmate cannot maintain a due process claim for failure to permit

witness testimony or present documentary evidence unless he shows that the document or testimony

"'would have affected the outcome of his case.'" *Grossman,* 447 F.3d at 805 (quoting *Chesson,* 986

F.2d at 366).

Here, the verified and unchallenged documentary evidence belies Plaintiff's claims.  First,

the Notice of Charge, while listing no witnesses in section 5 of the document, clearly informs the

Plaintiff that Officer Diana Smith "found a letter being sent out of BVCF by offender Giovanni

Laratta."  Docket #68-1 at 11.  Plaintiff was informed of this fact on October 5, 2007, six days

before the hearing.  *Id.*  Officer Smith was not presented as a witness by Defendant at the hearing

(*see* docket #68-2), nor was her name mentioned in the Disposition of Charge issued by Hearing

Officer Anderson (docket #68-1 at 14); thus, Plaintiff's claim that he did not know until after the hearing that Officer Smith "was used to secure his conviction of said infraction" is simply unsupported. However, Plaintiff fails to explain why or how he was unable to name Officer Smith as a witness for the hearing upon being notified of her involvement in the infraction; in fact, when asked at the hearing whether he waived presenting witnesses, he answered "yes." Docket #68-2 at 5, ll. 3-5.

More importantly, Plaintiff's assertions concerning how Ms. Smith's witness testimony would have affected the outcome of the hearing are unavailing. *See Grossman,* 447 F.3d at 805. Plaintiff states that Officer Smith "would have testified to the existance [sic] and contents of the said letter, and further, that she did not confiscate the said letter or any letter from the plaintiff." Docket #65 at 5. First, the letter was offered as evidence at the hearing and certain contents of the letter were read into the record. Docket #68-2 at 7. Thus, Plaintiff fails to explain how testimony about the existence and content of letter by Officer Smith would be necessary and affect the outcome of the hearing. Second, there was no question that the letter was not confiscated directly from the Plaintiff; the hearing officer found that the letter "crossed us through the facility mail system" and "was intercepted and confiscated by staff as evidence." Docket #68-3 at 2, ll. 20-22. Again, Plaintiff fails to explain how Officer Smith's testimony concerning this fact would be necessary.

Likewise, Plaintiff fails to demonstrate on supported facts that he "was denied the right to present [the letter] to the hearing board or even to have determined its existence and validate the alleged content." *See* docket #65 at 5. First, although Plaintiff was not provided a copy of the letter due to content and safety concerns, there is no dispute that he was given the opportunity to review the letter at the hearing. Docket #68-2 at 8, ll. 11-17. Second, as set forth above, certain contents of the letter were read into the record. Docket #68-2 at 7. Plaintiff fails to explain how these actions

denied him due process.  When asked by the hearing officer whether he wished to make a statement concerning the evidence presented, Plaintiff answered, "I waived my right to be silent, but I do not have any statements." *Id.* at 8, ll. 24-25.  Moreover, Plaintiff's assertion that he did not know until after the hearing that the letter "was relied upon to secure conviction of said infraction" is wholly unsupported.  At the hearing, Hearing Officer Anderson specifically informed the Plaintiff on the record that he found Plaintiff guilty of the Class I, Rule 13 charge, "basing my decision on the initiating officer's findings and experience as the intelligence officer for the facility, ***the copies of the handwritten letter authored by you, Offender Laratta***, and a disciplinary officer's investigation presentation."  Docket #68-3 at 3, ll. 8-17 (emphasis added).

For these reasons, the Court recommends finding that Plaintiff has failed to demonstrate on supported facts he was denied the opportunity to call witnesses and present documentary evidence in his defense pursuant to *Wolff, Maschner* and their progeny.

With respect to the sufficiency of the evidence at the hearing, Plaintiff "refutes having committed the acts alleged against him, and initially had no knowledge of the letter."  Docket #65 at 4.  He claims he learned that another inmate "fraudulent[ly] attempt[ed]" to "have the Plaintiff removed from the facility due to personal differences by placing the letter in the facility mail indicating illegal attempts." *Id.*  First, the Court notes that Plaintiff did not, either at the hearing or for his appeal, contend that he did not write the letter; in fact, Plaintiff's sole contention on appeal was, "[n]o where in the letter did I write that it was 'drugs' that I wanted for the purpose of selling and making a profit." *See* docket #68-1 at 15.

Second, the Court need only find "some evidence" supporting the hearing officer's decision in order to comport with due process requirements. *See Superintendent*, 472 U.S. at 455-56.  Here, the hearing officer relied on Defendant's knowledge and experience as both the initiating officer and

18

Intelligence Officer for the facility, the letter itself, and the investigation of the charge in finding

Plaintiff guilty of attempting to introduce drugs for sale at the facility. The handwritten letter states

in part,

> A Cuz - Im a need you ta do dis fo me. Get wit my bro 2 train a b--ch 2 come up here. She gotsta have a load and every time she comes Ill give her a bill. I just need you 2 find someone thats over 18. Get her on my BOI's visiting list. Ill give you the name & number later. But I need you 2 get on it 4 real cuz this place is dry as duck. No dog HP. If I could get dis connect goin and a b--ch 2 come up every wkend well be gettin Gs. I got a bank account or we could just collect cash off da street through peeps in here. You could collect and stack that up. ... But I gotta get a b--ch dat knos what up 2 come every wkend. She could start at 100D a trip but dat will go up once she comes a few times.

Docket #68-1 at 5-6. The letter was accompanied by an envelope addressed to "Shawn Larratta"

at a Denver address with a return address showing "G Laratta, No. 136216." *Id.* at 4. The letter was

interpreted and presented at the hearing as Plaintiff's attempt to solicit his cousin for assistance in

finding a female to bring drugs to him for sale to other inmates through weekly visits. Plaintiff made

no statements nor offered any arguments, evidence or witnesses in his defense. *See* docket #68-2.

Consequently, the Court finds that the hearing record is not "devoid of evidence, providing no

support for a disciplinary [officer]'s decision." *See Terry*, 259 F. App'x at 86. Rather, there is

clearly some evidence in the record sufficient to support the hearing officer's decision and comport

with due process.

Accordingly, this Court recommends that the District Court find that Plaintiff has failed to

demonstrate on supported facts that Defendant violated his Fourteenth Amendment right to due

process in the October 11, 2007 disciplinary hearing, and grant Defendant's motion finding he is

entitled to qualified immunity on Plaintiff's claim.

## III.    Due Process in Notice of Rejection of Mail

Plaintiff alleges that he "was never issued a 'Disposition of Notice' pertaining to the letter -

defendant McCormac disregarded plaintiff [sic] right to due process through his failure to notify mailroom or proper staff in his confiscation of an alleged letter rendering proper officials unable to issue a 'notice' in regard to his alleged confiscation of any mail said to have been confiscated by facility officials allegedly on its way out of the facility by way of United States mail." Docket #65 at 5. However, Plaintiff fails to demonstrate how such failure by Defendant, if true, constitutes a constitutional violation under prevailing law. *See Gaines*, 292 F.3d at 1225 ("[t]o the extent [plaintiff] seeks relief for alleged violations of state statutes and prison regulations ... he has stated no cognizable claim under § 1983"). Therefore, this Court recommends finding that Plaintiff has failed to demonstrate on supported facts a violation of due process in Defendant's alleged failure to notify proper personnel to issue a notice of disposition of mail. The Court recommends that the District Court grant Defendant's motion as to this claim finding that he is entitled to qualified immunity.

<u>**CONCLUSION**</u>

Based upon the foregoing and the entire record herein, the Court RECOMMENDS that the Defendant's Motion for Summary Judgment [filed September 14, 2010; docket #68] be **GRANTED** and Plaintiff's due process claims against Defendant be dismissed with prejudice.

Respectfully submitted this 7th day of February, 2011, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty

Michael E. Hegarty
United States Magistrate Judge